UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH TAYLOR,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>　　　　　　Defendant. | CASE NO.   **C07-5335BHS**<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for May 9, 2008 |

　　　This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been fully briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

INTRODUCTION

　　　Plaintiff, Kenneth Taylor, was born in 1962. He last worked full time in 2000 as a plumber. He had worked as a plumber for approximately 25 years. (There is evidence that he worked in 2005, for New Life Fellowship Ministries, who paid him approx. $5,245. It is not known what this work entailed.) Plaintiff has a grade 11 education, and he did not obtain his GED.

　　　Plaintiff filed concurrent applications for Social Security and Supplemental Security Income (SSI) disability benefits on January 16, 2002 and January 23, 2002, alleging that he has been disabled under the Social Security Act since June 17, 2001. (Tr. 84-88, 597-99). His applications were denied initially and

1 on reconsideration. (Tr. 67-69, 71-74).

2 Mr. Taylor filed new applications for Social Security and SSI disability benefits on August 15, 2003 and September 5, 2003, again alleging that he has been disabled under the Social Security Act since June 17, 2001. (Tr. 80-83, 603-07).  Plaintiff claims he is disabled due to impairments of his left shoulder and arm, neck, back, carpal tunnel syndrome, gastrointestinal disorder, depression, and post-traumatic stress disorder.  (Tr. 80, 134, 173).  His applications were denied initially and on reconsideration. (Tr. 60-61, 63-66). Mr. Taylor filed a hearing request, and a hearing was held before an Administrative Law Judge ("ALJ") on May 24, 2006. (Tr. 629-57). On August 14, 2006, the ALJ issued a decision in which he found that Mr. Taylor was not disabled. (Tr. 15-37). Mr. Taylor requested review by the Appeals Council which, on May 21, 2007, denied his request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (Tr. 7-11).

On January 14, 2007, Plaintiff filed his Complaint with the Court seeking judicial review of the administrative decision.  Plaintiff raises the following issues:

1. the ALJ failed to properly develop the record;

2. the ALJ failed to properly consider all of Plaintiff's severe impairments;

3. the ALJ failed to properly consider medical evidence from Plaintiff's treating and examining physicians;

4. the ALJ failed to properly consider Plaintiff's testimony regarding his limitations;

5. the ALJ improperly determined Plaintiff's residual functional capacity; and

6. the Commissioner failed to meet the burden of showing that Plaintiff can perform any work in the national economy.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

A.   *THE ALJ PROPERLY DEVELOPED THE RECORD AND PROPERLY ASSESSED PLAINTIFF'S SEVERE IMPAIRMENTS AND THE MEDICAL EVIDENCE*

Plaintiff argues the ALJ failed to properly develop the record (failed to consider records from Dr. Tosomeen), failed to properly assess Plaintiff's severe impairments, and failed to properly consider the medical evidence provided by Ms. Dant, Dr. Souri, Dr. Hull, Dr. Birchard, Dr. Caserta, Mr. Pingree, Mr. Schiller, Dr. Hill, and Dr. Slattery.  Plaintiff argues "the uncontradicted medical evidence of record would support a finding that Mr. Taylor has been unable to work at least between January 2002 and April 2006." Plaintiff's Opening Brief at 20.

In making these arguments Plaintiff focuses on what the ALJ did not do in his review of the record and medical evidence; he fails to acknowledge the evidence the ALJ found persuasive.  The court has carefully reviewed the record and the ALJ's analysis of Plaintiff's impairments and the medical evidence.  The undersigned does not find any error.

The ALJ reviewed the record and found that substantial medical evidence supported severe impairments, including "cervical spine degenerative disc disease status post fusion in February 2002 with hardware removal in September 2004," left shoulder injury, left acromioclavicular joint surgery in November 2002 and February 2003.  (Tr. 20).  The ALJ stated, "The claimant has other impairments that are non-severe or were not severe for the required duration of 12 months."  Id.  In his written opinion, the ALJ summarized the medical evidence and opinions of several physicians and medical providers, including Dr. Souri, Dr. Lang, Dr. Caserta, Willapa Counseling Center, Mr. Schiller, DSHS, Dr. Smith, Dr. Krueger, Dr. McRae, and Dr. Collingwood (Tr. 20-24).  The ALJ concluded:

> In summary, the claimant has depression with some episodes of severity that responded within a few months of treatment.  The evidence does not establish a continuous period of 12-months duration in which the depression was severe.  His alcoholism does not cause significant work-related limitations, based on his solid work record during many years of alcohol abuse.

(Tr. 24).

Evaluating Plaintiff's residual functional capacity the ALJ discussed the medical evidence in further detail. (Tr. 24-32) With respect to Plaintiff's limitations, the ALJ specifically noted the

REPORT AND RECOMMENDATION
Page - 3

chronology of the medical evidence and opinions from the following medical providers: Dr. Souri, Mr. Geiger, Dr. Hill, Dr. Birchard, Dr. Slattery, Dr. Hull, Dr. Pniewski, Dr. Smith, Dr. Caserta, Dr. Lang, Ms. Emery, Mr. Paappana, Ms. Dant, and Dr. Turner. The ALJ then evaluated Plaintiff's subjective complaints in light of the medical evidence (further discussed below), and concluded:

> Considering the claimant's combined impairments, the ongoing limitations from his cervical spine and shoulder impairments, and the effects of pain and medications, the undersigned finds that he retains the following residual functional capacity: He can occasionally lift and carry ten pounds. He has no restrictions in sitting, standing or walking. He can occasionally push or pull with the right upper extremity. He has no restrictions with foot controls. He cannot climb or crawl. He has no restrictions with balancing, stooping, kneeling, or crouching. With regard to the left upper extremity, he cannot push or pull, do over-the shoulder reaching, feel or finger. He can occasionally reach in all other directions and can occasionally handle. He can function in a normal workplace. He can work in occupations which require the ability to understand, remember, and carry out detailed instructions; however, because of pain and side effects from medications he may have problems following through on detailed multiple tasks. He can have frequent interactions with coworkers, supervisors, and the public, and can work within proximity to others on a continuous basis without being a distraction.

(Tr. 34).

Plaintiff argues that the ALJ erred in finding that his failed neck syndrome with chronic right upper extremity nerve damage, depression, carpal tunnel syndrome, and heel fracture were non-severe impairments. Plaintiff argues that the ALJ did not consider the "failed neck syndrome" diagnosed by Dr. Tosomeen in April and May 2006.

To qualify for disability insurance benefits or SSI disability benefits, a claimant must be unable to work at a substantially gainful level for 12 consecutive months due to a physical or mental impairment lasting at least that long, unless the impairment is expected to result in death. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909; Barnhart v. Walton, 535 U.S. 212, 217-22 (2002). Successive, unrelated severe impairments cannot combine to meet this 12-month duration test, and concurrent impairments must combine at a severe level for 12 months to meet it. 20 C.F.R. §§ 404.1522, 416.922.

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996). An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the Commissioner's

REPORT AND RECOMMENDATION
Page - 4

regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85- 28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" **only** if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individuals ability to work." *See* SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1998) (adopting SSR 85-28)(emphasis added).

Here, as noted above, the ALJ reviewed the voluminous medical evidence and found a severe neck impairment, that limited Plaintiff to occasional lifting of 10 pounds and occasional pushing or pulling with his right arm. Tr. 20, 34, 36. The opinion evidence from Dr. Tosomeen, further discussed below, was not addressed by the ALJ, but it was properly addressed by the Appeals Council. The ALJ sufficiently accounted for Plaintiff's neck and right arm impairments, which is reflected in the ALJ's residual functional capacity assessment.

Plaintiff argues that the ALJ should have considered limitations from his mental impairment, carpal tunnel syndrome, and heel fracture regardless of whether they were severe for 12 continuous months. The ALJ properly found that Plaintiff's mental impairment, carpal tunnel syndrome, and heel fracture were not severe for the required 12 continuous months. Tr. 20-24. For instance, in April 2003, Plaintiff had an overall improvement in mood, anxiety, and anger control. Tr. 377. He chose not to pursue further treatment, less than 12 months after June 1, 2002, the beginning of the relevant period under review. Tr. 377. In May 2003, Dr. Krueger evaluated Plaintiff and found mostly mild functional limitations. Tr. 479-82. Plaintiff returned for counseling in February 2004, but by the summer of 2004 he was coping better and was busy with church activities. Tr. 518-20, 524. In January 2006, Plaintiff's depression was "well stabilized with Zoloft and Amitriptyline." Tr. 624. Moreover, at the May 2006 hearing, Plaintiff testified that his medication worked and that he did not require further counseling. Tr. 637. The ALJ thus properly found that Plaintiff's depression, which responded to treatment within 12 months, was non-severe. Tr. 24.

Similarly, the ALJ found that Plaintiff's bilateral carpal tunnel syndrome was not severe for the

1  required 12 months. Tr. 20-21. Plaintiff had right carpal tunnel surgery in August 2002, and left carpal
2  tunnel surgery in October 2002. Tr. 370-71. Dr. Souri referred him to physical therapy in November
3  2002. Tr. 369. In July 2004, Plaintiff told Dr. Lang that he had complete resolution of his hand symptoms
4  after his carpal tunnel release operations. Tr. 537. The ALJ properly found his bilateral carpal tunnel
5  syndrome non-severe.

6      The ALJ also found Plaintiff's heel fracture non-severe for the required 12 continuous
7  months. Tr. 21. In June 2005, Plaintiff jumped from a roof after retrieving a Frisbee and fractured his left
8  heel. Tr. 590. By September 2005, Plaintiff's heel was healing both clinically and radiographically, and
9  Dr. Slattery estimated that he would return to normal function in about 2-3 months. Tr. 587. Plaintiff
10 testified that he had no problems with his heel. Tr. 636. This impairment clearly lasted less than 12
11 continuous months and was non-severe.

12     Plaintiff further argues the ALJ failed to properly consider the medical evidence provided by Ms.
13 Dant, Dr. Souri, Dr. Hull, Dr. Birchard, Dr. Caserta, Mr. Pingree, Mr. Schiller, Dr. Hill, and Dr. Slattery
14 The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230
15 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts.
16 Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by
17 another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate
18 reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499,
19 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial
20 evidence that justifies the rejection of the opinion of either an examining physician or a treating
21 physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747,
22 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion
23 because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied
24 on laboratory test results, contrary reports from examining physicians and on testimony from the claimant
25 that conflicted with the treating physician's opinion.

26     Substantial evidence supports the ALJ's conclusions with respect to the medical evidence. The
27 ALJ's written opinion and the Appeals Council have properly discussed or noted opinions and reports
28 from each of the medical provides cited by Plaintiff. More significantly, for each of the limitations and

REPORT AND RECOMMENDATION
Page - 6

1 the severity assigned, the ALJ has made a reasonable interpretation of the evidence and cited substantial
2 evidence to support his assessment. For example, the ALJ noted a normal EMG study and Dr. Lang's
3 report that it was difficult to explain the lack of sensation in Plaintiff's left arm (Tr. 34) The ALJ
4 nonetheless gave some credit to Plaintiff's allegation of significant limitation with his left arm and Dr.
5 Birchard's and Dr. Caserta's opinions, and the ALJ ultimately, and reasonably, limited Plaintiff to no
6 pushing, pulling, over-shoulder reaching, feeling, or fingering with that arm. Tr. 34, 36. Another example
7 of the ALJ's adequate review of the medical evidence is reflected in the ALJ's assessment of Plaintiff's
8 neck and back pain. Plaintiff argues for more severe limitations based on Dr. Hill's opinion, but the ALJ
9 noted this opinion did not establish disability for the required 12 months (Tr. 32). The ALJ found
10 Plaintiff's symptoms significantly improved in September 2004 following surgery. Id.  Substantial
11 evidence in the record supports the ALJ's evaluation and assessment of the medical evidence and
12 Plaintiff's limitations.
13 　　　Finally, Plaintiff argues that the ALJ failed to fully and fairly develop the record by omitting
14 medical records submitted after the May 2006 hearing. Following the administrative hearing, Plaintiff
15 sent additional medical records from Ann Tosomeen, M.D., of the Shoalwater Bay Wellness Center, to
16 the ALJ in June 2006, but the records were not included in the record before the ALJ or referenced in the
17 ALJ's decision. Plaintiff's Opening Brief at 14. Plaintiff subsequently submitted these records to the
18 Appeals Council. (Tr. 617-28). Plaintiff's argument that the ALJ violated his due process rights by not
19 considering these records fails because the Appeals Council considered this evidence and found it did not
20 warrant changing the ALJ's decision. (Tr. 8, 11).
21 　　　The Appeals Council's conclusion was rational because the additional evidence supports the
22 ALJ's review of the medical evidence. According to Dr. Tosomeen, in January 2006, Plaintiff's
23 depression had improved and was well stabilized with medication. (Tr. 624-25). His overall quality of
24 life was good and he seemed to be functioning very well. (Tr. 624-25). Plaintiff did not report pain,
25 cleaned his church as a volunteer, and walked "miles" daily. (Tr. 620-21). The Appeals Council properly
26 found that this evidence did not warrant changing the ALJ's decision.
27 　　　In sum, it is clear to this court that the ALJ properly considered the medical evidence and opinions
28 of record. The ALJ decision is properly supported by substantial evidence in the record.

REPORT AND RECOMMENDATION
Page - 7

B.  **THE ALJ PROPERLY WEIGHED AND EVALUATED PLAINTIFF'S CREDIBILITY AND LAY WITNESS STATEMENTS**

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints.  Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'"  Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)).  An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen, *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically.  Similarly, the ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony s/he rejects.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ addressed the testimony provided by Plaintiff and the lay witnesses.  He wrote:

> In February 2002, the claimant stated that sometimes he could no walk or feel his left side. He performed household chores and stated that it took him twice as long to do things as it took him previously.  He did not drive (3E).  He requested disability benefits while he was being retrained (6E, 7E).
>
> In August 2003 the claimant stated that he could walk for three hours, stand for three hours, and sit for six hours.  He could occasionally bend.  He felt he could carry less than ten pounds.  He could vacuum and wash dishes.  It was hard to bend his neck and his left arm went numb.  He could read and watch television (12E).
>
> An SSE facilitator in July 2003 reported that the claimant sat in a chair "just fine and completed all paperwork during a two-hour period" (11E). [Footnote omitted].
>
> In September 2003, the claimant's mother stated that he had a hot temper and was paranoid.  He could visit well with family members as long as no one made him mad.  She noted that the claimant bowled for awhile but then it hurt too much.  He walked.  He did not have any friends.  He went to family counseling once a week.  He had a computer and emailed people and looked things up.  He did not have contact with his children due to a restraining order because of his temper.  He lived in an unstable area with illegal and physically threatening activities, and was a "threatened prisoner in his own home" (13E). The mother's report is inconsistent with other evidence of record.  For example, in May 2003 the claimant told Dr. Krueger that he had a lot of friends in Everett, that he got along well with people at work, and that he took the bus to his mother's place twice a week

(27F). Accordingly, her report is accorded limited evidentiary weight.

The claimant described severe neck and left arm symptoms in March and July 2004 (17E).

At the hearing, the claimant testified that he currently received treatment at Shoalwater Bay. He was on methadone and his provider was trying to find a pain specialist so he would not use narcotics. He stated he had been going to Shoalwater Bay for two and half months. Dr. Hill stopped being his doctor after the claimant got drunk and jumped off a roof. Dr. Hill told the claimant he could no longer treat him due to the drinking.

The claimant testified that he was still on Zoloft for depression. Shoalwater provided that medication. He went to a psychiatrist in South Bend, Willapa Bay, and was treated for depression. He had weekly counseling for eight months. That treatment ended as he no longer needed therapy and the medicine helped.

The claimant testified that he had no external feeling in his left arm. He could only hold things in his left hand for about two minutes. He did not need assistance with bathing. He did not drive, and last drove about two months previously. He stopped driving as he had two DUI's in 1998 and 1999 and his license was revoked. He owed back child support which he could not pay, and therefore could not get his license back. He got around his town by walking. He lived by himself and was responsible for his own place. He did his own shopping. He pushed a grocery cart to his home if there were a lot of groceries. He could vacuum, but it still hurt.

The claimant felt he could not lift more than ten pounds with his right arm due to pain. He was on methadone as it kept his pain level down to 5-6/10. It controlled his pain better than Vicodin. His pain is primarily through his neck, to his shoulder blades, and across his mid-back. When asked which side was worse, he stated "probably the right." His left arm problems started after his neck surgery. He could do things now that he could not do prior to his fusion surgery. He could do "normal things" but hurt all the time. His doctor told him he had arthritic spurs growing on his spine. Concentration was hard due to the methadone. He did not sleep well due to pain. He lay down a lot during the day. He got irritable because of bad pain. He no longer reads for pleasure as he could not concentrate on what he read.

[Omitted].

In evaluating the claimant's credibility, it is noteworthy that he has been incapacitated for short-term periods by his impairments, particularly the various surgical procedures. He has residuals from the cervical spine and left shoulder impairments, and he is on pain medications that affect his concentration. Therefore, his subjective complaints are credible to a degree. Those complaints are not credible to the extent that the claimant was disabled for a continuous period of 12 months, however.

The claimant's daily activities support a finding that he has some use of his upper extremities and that he has no restrictions in standing and walking. During the period at issue he participated in an educational program and was on a list for DVR retraining. He has engaged in activities that are inconsistent with allegations of total disability, such as bicycle riding, climbing on a roof to retrieve a frisbee, and hanging from said roof. He has been active with volunteer programs in his church and involved with community meetings. In March 2003 he reported that he loved to cook, occasionally read and with an interesting book could stay with it until finished, and was on the Internet two hours at a time (27F.3). His tendency to get into fights, as evidenced by injuries sustained during altercations, undercuts his allegations of total disability.

The claimant's left upper extremity symptoms do not appear to be as severe as alleged,

REPORT AND RECOMMENDATION
Page - 9

> considering the roof-hanging incident and the medical findings, such as a normal EMG study and a minimally abnormal somatosensory evoked potential study. Dr. Lang noted that "with intact reflexes it is difficult to explain the lack of sensation in his left arm" (41F.3). Dr. Smith, a specialist in bone and joint disorders, could not explain the claimant's left upper extremity symptoms (31F.2). Dr. Birchard noted a couple of instances of prevarication regarding the supply of pain medications and regarding alcohol use. The evidence of drug-seeking-behavior somewhat undercuts the claimants credibility, keeping in mind that he has been through a lot of surgery with attendant needs for pain control. As noted previously, the claimant apparently worked during the period at issue as a chef and handyman, in addition to services in 2005 for New Life Fellowship Ministries. He did not report those activities when asked at the hearing.

(Tr. 32-34).

After reviewing the ALJ's decision and the administrative record, it is clear the ALJ has provided sufficient evidence to discredit the Plaintiff's allegations of total disability. The record properly supports the ALJ's analysis of Plaintiff's medical evidence, Plaintiff's statements, his daily activities, and noted inconsistencies. The record also properly supports the ALJ's analysis of the inconsistencies in the testimony of Plaintiff's mother. The court notes it is the ALJ who is responsible for determining credibility, Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999), and the ALJ may make first-hand observations during a hearing as a factor in assessing a claimant's credibility, Morgan v. Commissioner of SSA, 169 F.3d 595, 599-600 (9th Cir. 1999). Accordingly, the ALJ did not err when he evaluated and discredited Plaintiff's and Plaintiff's mother's statements regarding the severity of Plaintiff's limitations.

C.   *THE ALJ PROPERLY EVALUATED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY*

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a claimant did in the past. 20 C.F.R. § 404.1520(e).

In this case, the ALJ examined the record, as discussed above, and concluded:

> Considering the claimant's combined impairments, the ongoing limitations from his cervical spine and shoulder impairments, and the effects of pain and medications, the undersigned finds that he retains the following residual functional capacity: He can occasionally push or pull with the right upper extremity. He has no restrictions with foot controls. He cannot climb or crawl. He has no restrictions with balancing, stooping, kneeling, or crouching. With regard to the left upper extremity, he cannot push or pull, do over-the-shoulder reaching, feel or finger. He can occasionally reach in all other directions and can occasionally handle. He can function in a normal workplace. He can work in occupations which require the ability to understand, remember, and carry out detailed instructions; however, because of pain and side effects from medications he may have problems following through on detailed multiple tasks. He can have frequent interactions

REPORT AND RECOMMENDATION
Page - 10

with coworkers, supervisors, and the public, anc can work within proximity to others on a continuous basis without being a distraction.

(Tr. 34).

Plaintiff's argument that the ALJ failed to properly assess his RFC is premised on the earlier arguments that the ALJ failed to properly consider his severe impairments and the medical evidence, in addition to his testimony or credibility. As discussed above the ALJ did not err in assessing Plaintiff's impairments, the medical evidence, or the severity of plaintiff's limitations. The ALJ's RFC properly reflects the medical evidence which was relied upon by the ALJ. After reviewing the record, this court does not find any error in the ALJ's evaluation of Plaintiff's RFC.

**D.   *SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT PLAINTIFF IS ABLE TO PERFORM PAST RELEVANT WORK, AND, ALTERNATIVELY, OTHER WORK IN THE NATIONAL ECONOMY***

Based upon vocational expert testimony, the ALJ in this case found that Plaintiff was not capable of performing past relevant work, but retained the ability to perform work as a microfilm document preparer, addresser, storage rental clerk, or parking lot attendant. (Tr. 35). Plaintiff contends the ALJ erred when he relied on the expert's testimony to reach this conclusion.

The Ninth Circuit recently wrote:

> At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f). *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. [Footnote omitted]
> This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e) The claimant must be able to perform:
> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62.

Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001). At step-five the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity. *See* Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184

REPORT AND RECOMMENDATION
Page - 11

1  (9th Civ. 1995).  In <u>Tackett</u>, the court noted "there are two ways for the Commissioner to meet the burden
2  of showing that there is other work in 'significant numbers' in the national economy that claimant can
3  perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational
4  Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." <u>Id</u>.

5       Plaintiff's allegation that the ALJ erred when he relied on the Vocational Expert's testimony to
6  conclude Plaintiff was able to return to past relevant work is without merit.  The ALJ's hypothetical to
7  the vocational expert properly reflected Plaintiff's RFC (Tr. 647-654). The undersigned finds no error in
8  the ALJ's step-five finding that Plaintiff, given his RFC, is capable of performing light to sedentary work,
9  specifically including the jobs identified by the vocational expert.

10 CONCLUSION

11       Based on the foregoing discussion, the Court should affirm the Administration's final decision
12  denying plaintiff's application for social security disability benefits.  Pursuant to 28 U.S.C. § 636(b)(1)
13  and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service
14  of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a
15  waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating
16  the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 9,**
17  **2008**, as noted in the caption.

18       DATED this 15th day of April, 2008.

                                                   */s/ J. Kelley Arnold*
                                                   J. Kelley Arnold
                                                   U.S. Magistrate Judge